Solomon M. Radner (MI Bar No. P73653)
EXCOLO LAW, PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
(248) 291-9719
sradner@excololaw.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Virginia Archer

                *Plaintiff*,

    v.

Officer C. Orr; et al.,

                *Defendants*.

Case No. CV-18-2434-PHX-HRH

**PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT ORR

NOW COMES Plaintiff, Virginia Archer, by and through her attorneys, Solomon M. Radner and Excolo Law, PLLC, for the reasons stated in the attached brief in support, requests this Honorable Court grant her motion for summary judgment against Defendant Orr on Counts I, II, and IV of her Second Amended Complaint.

                Respectfully Submitted,

                EXCOLO LAW, PLLC

Dated: May 14, 2019

                */s/ Solomon M. Radner*
                Solomon M. Radner (MI Bar No. P73653)
                Attorney for Plaintiff
                26700 Lahser Rd., Suite 401
                Southfield, MI 48033
                (866) 939-2656
                sradner@excololaw.com

# TABLE OF AUTHORITIES

**Cases**

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) ........................................... 10

*Anderson v. Creighton*, 483 U.S. 635 (1987) .................................................................... 12

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .......................................................................... 12

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ............................................. 10

*Bell v. Wolfish*, 441 U.S, 520 (1979)) .................................................................................. 6

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474 (9th Cir.2000) ...................................................................................................................... 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................... 4

*Dubner v. City and County of San Francisco*, 266 F.3d 859 (9th Cir. 2001) .................... 8

*Florida v. Royer*, 460 U.S. 491, 498 (1983) ......................................................................... 8

*Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013) ..................................................... 12

*Graham v. Connor*, 490 US 386 (1989) ........................................................................... 5, 6

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................................................................... 11

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................................. 12

*Karl v. City of Mountlake Terrace*, 678 F.3d 1062 (9th Cir. 2012) .................................. 12

*Kingsley v. Hendrickson*, 135 S.Ct. 2466, (2015) ............................................................... 6

*Lal v. California*, 746 F.3d 1112 (9th Cir. 2014) .............................................................. 12

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ............................................................ 11

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006) ..................................... 5

*Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993) .......................................................... 12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................. 11, 12

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ...... 4

*Tennessee v. Garner*, 471 U.S. 1 (1985) ........................................................................... 6

*Terry v. Ohio*, 392 U.S. 1 (1968) ...................................................................................... 8

*United States v. Arvizu*, 534 U.S. 266 (2002) .................................................................. 8

*United States v. Garza*, 980 F.2d 546 (9th Cir. 1992) ...................................................... 8

**Statutes**

Fed. R. Civ. P. 56(a) ........................................................................................................ 4

Solomon M. Radner (P73653)
EXCOLO LAW, PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
(248) 291-9719
sradner@excololaw.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Virginia Archer

Case No. CV-18-2434-PHX-HRH

*Plaintiff*,

v.

Officer C. Orr; et al.,

**PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

*Defendants*.

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT ORR

**INTRODUCTION**

This case arises from an incident on February 14, 2018, where Ms. Virginia Archer ("Ms. Archer" or "Plaintiff"), an 84-year-old elderly infirmed woman, was subjected to an unlawful arrest as well as excessive and unnecessary use of force by Defendant Christopher Orr ("Orr") for no lawful reason. No reasonable basis existed for Orr to use force against Plaintiff and therefore Plaintiff is entitled to relief. Defendant Orr's actions violated the rights guaranteed to Ms. Archer by the Fourth and the Fourteenth Amendment, and she requests this Honorable Court enter an order granting summary judgment against Defendant Orr in her favor.

**STATEMENT OF RELEVANT FACTS**

Ms. Virginia Archer is an 84-year-old law-abiding citizen of the United States and resident at 1767 E. Indigo Street in Mesa, Maricopa County, State of Arizona. She has medical conditions pursuant to her advanced age and has a complex medical history including cerebral strokes, high blood pressure, and renal failure. (Ex. 2, Electronic Patient Care Report). Ms. Archer has a grandson, Mr. Andrew Hahn, who at all relevant times resided with her. On February 14, 2018, at approximately 5:45 p.m., the City of Mesa Police Department, through the emergency line, received a phone call from Mr. Hahn's mother, Ms. Sue Ann Johnson, stating that she received a concerning text message regarding her son, who was at Plaintiff's house, and she'd like for someone to check on his wellbeing. During that call, Ms. Johnson told dispatch that she believed there could be a gun somewhere inside the home. (Ex. 3, CAD History Inquiry).

1

At approximately 6:00 p.m., Ms. Archer was inside her residence when Defendant Christopher Orr, Defendant Grimm and other City of Mesa Police Department officers arrived in response to Mr. Hahn's mother call. (Ex. 4, Orr's Investigation Report). A Mesa Police Department officer started calling out from outside Plaintiff's home for Mr. Hanh with a megaphone, asking for him to come outside. (Ex. 5, Orr's Body Cam, min. 4:52—6:55). Defendant Orr and the other officers started an "immediate action team" and stood at the side of Orr's police car taking cover with lethal weapons drawn, using the police patrol as a shield. (Ex. 4; Ex 5).

Ms. Archer exited the front door of her residence and stood still on the walkway in front of her house. (Ex. 5, min. 7:00—7:53). Defendant Orr and Defendant Grimm started talking to Ms. Archer as she was moving forward and asked her to come over where they are, behind the police patrol car. (*Id*., min. 8:00—10:50; Ex. 6, Grimm's Body Cam, min. 0:00—2:39). Ms. Archer was astonished and confused with the scenario at sight. (*Id*.) She told Officer Orr that Mr. Hanh did not have a gun and she would rather have them come into the house to see that there is no gun. (Ex. 7, Orr's Internal Affairs Interview, min. 5:30-6:20). When directed otherwise by the officers, Ms. Archer complied with the requests and walked towards Defendant Orr and Defendant Grimm. (Ex. 5, min. 10:50—11:10; Ex. 6, min. 2:39—3:02). She arrived at the perimeter; then she turned around and faced her residence. (Ex. 5, min. 11:10—11:14; Ex. 6, min. 3:02—3:05). In that precise moment, Defendant Grimm grabbed Ms. Archer's right arm and started to pull her back away from the perimeter. (Ex. 5, min. 11:14—11:17; Ex. 6, min. 3:05—3:10). Ms. Archer then asked Defendant Grimm "what are you doing?" (*Id*.) Immediately, Defendant Orr

2

grabbed Ms. Archer's left wrist with his left hand and putted his right hand in the her back. (Ex. 5, min. 11:17—11-19; Ex. 6, min. 3:10—3:12). Defendant Orr pushed Ms. Archer towards the rear of the perimeter. (*Id*.). She slightly turned towards Defendant Orr and asked, "what are you doing to me?", while pointing at his grip. (Ex. 5, min. 11:19—11:23; Ex. 6, min. 3:12—3:14). Defendant Orr, then, pushed Ms. Archer forward on her left shoulder area and pulled her left arm in a control hold, striking her to the ground. (Ex. 5, min. 11:23—11:28; Ex. 6, 3:14—3:21). Ms. Archer hit the pavement without being able to use her hands to cushion the fall as a result of Defendant Orr's takedown. (Ex. 5, min. 11:29—11:33; Ex. 6, min. 3:21—3:22; Ex. 8, Mesa PD Use of Force Report).

Ms. Archer suffered physical injuries in her wrist, arm, forehead, right eye, and right knee as a result of Defendant Orr's takedown and excessive use of force. (Ex. 9, Mesa Police Department Forensic Services; Ex. 2). Defendant Grimm assisted Defendant Orr in placing her in handcuffs. (Ex. 5, min. 11:33—16:00; Ex. 6, min. 3:22—21:05). Ms. Archer stated that the handcuffs were hurting her arms and in response was told there was nothing they would do about it. (Ex. 6, 7:15-7:30). Ms. Archer was not a physical threat to Defendant Orr. (Ex. 10, Orr's Deposition p. 113:24—115:02).

Because of Ms. Archer's injuries, Mesa Fire/Medical paramedics were called. She kept in handcuff until the paramedics arrived and were only removed at the request of the paramedics. (Ex. 2; Ex. 4). The paramedics stated in their report that the cause of the injuries was due to a physical altercation with the police department. (Ex. 2). In view of the severity of the injuries and the advance age of Ms. Archer, she was transported to

3

Banner Desert Medical Center for further medical evaluations. (Dkt. #13, Answer to Amended Complaint ¶ 34).

Defendant Orr issued Ms. Archer a criminal citation for A.R.S. 13-24502A1 Obstructing Governmental Operation. (Ex. 11, Obstructing Gov't Ticket; Dkt. #13, ¶ 35). Defendant Orr decided to issue the criminal citation after he interviewed Ms. Archer on the scene, and not at the moment he detained her. (Ex. 10, p. 126:11). The criminal case against Ms. Archer was dismissed at the prosecutor's request on April 17, 2018, in Mesa Municipal Court Case No. 2018013288. (Ex. 12, Municipal Court Disposition; Ex. 13, Defendant Mesa's Response to 1st set of Interrogatories ¶ 15). Finally, Defendant Orr was disciplined with a 10-hour suspension and was forced to take 10-hours of training due to the "use of unnecessary or improper use of force" on Ms. Archer in violation of Mesa Police Department Policies. (Ex. 16, IA Investigation; Ex. 14, Notice of Intent to Discipline; Ex. 15. Assistant Chief Concurring; Ex. 17, Notice of Suspension; Ex. 13, ¶ 5). The Mesa Police Department Use of Force policy permits only "reasonable levels of force necessary to lawfully control and/or arrest citizens" and "must be judged from the perspective of a reasonable officer on the scene." (Ex. 20, Mesa Police Use of Force Philosophy & Definitions).

## LEGAL STANDARD

Summary Judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden initially falls on the movant to identify for the court "the

portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. *Id*. (quoting *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000)). On the other hand, when the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the non-moving party. *Miller*, 454 F.3d at 987. When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Id*. On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Id*. at 988.

## LEGAL ARGUMENT

### A. DEFENDANT ORR'S USE OF FORCE ON MS. ARCHER WAS EXCESSIVE AND OBJECTIVELY UNREASONABLE

The Fourth Amendment guarantees citizens to be free from unreasonable searches and seizures. U.S. Const. amend IV.  "[A]ll claims that law enforcement officers have used

excessive force —deadly or not— in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 US 386, 395 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id*. at 396.

"Excessive force means force applied recklessly that is unreasonable in light of the facts and circumstances of the time." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2471 (2015). To succeed on an excessive use of force claim, Plaintiff must prove that: "(1) Defendants used force on plaintiff; (2) Defendants' use of force was unreasonable in light of the facts and circumstances at the time; (3) Defendants knew that using force presented a risk of harm to plaintiff; and (4) Defendants' conduct caused some harm to plaintiff." *Id.* The Defendants' use of force must be analyzed from the perspective of a reasonable officer facing the same circumstances. *Id*. Because the reasonableness test is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case but not limiting to (1) the quantum of force used, (2) the severity of the crime at issue, (3) whether the suspect poses an immediate threat to the safety of the officers or others, and (4) whether she is actively resisting arrest or attempting to evade arrest by fight. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Bell v. Wolfish*, 441 U.S, 520, 559 (1979)).

6

The facts on this case are uncontested. There is vast evidence, including body cam recordings, testimonies, admissions, and Internal Affairs' findings that warrants summary judgment. See (Ex. 1, 4, 5, 6, 7, 8, 15, 16, 17 & 18). Further, there is no genuine issue of disputed fact that Defendant Orr forced Ms. Archer to the ground aggressively by twisting her arm behind her back and forcing her head into the concrete. (Ex. 5; Ex. 6). Ms. Archer was not in custody, she was not a suspect, nor was not about to be arrested. She was an elderly woman clearly confused by the situation. (*Id*.). She did not actively resist, rather she asked why force was being used on her when she had already told them that there was no gun. (*Id*.). Defendant Orr grabbed, pushed, and tackled Ms. Archer, an 84-year-old woman, to the ground and caused severe injuries. After he tackled her, he handcuffed her until paramedics requested the handcuffs to be removed. She suffered injuries and abrasions to her head and arms as a result of the tackle. (Ex. 2; Ex. 9).

It is undisputed that Defendant Orr used unnecessary and improper force on Ms. Archer. (Ex. 16). Defendant Orr's use of force was objectively unreasonable under the *Graham* factors. First, Defendant Orr used significant force when he twisted Ms. Archer's arm and forced her to the ground. The result of the use of force was injuries to her head and arms requiring hospitalization. Mesa Police Department found his actions to be unnecessary and an improper use of force, which violated the use of force policy's reasonableness requirement. (Ex. 19). Second, Ms. Archer had not committed a crime nor was she suspected of committing any crime. The officers were there to handle a situation involving a different individual in her home. Further, the baseless ticket Defendant Orr wrote Ms. Archer was dismissed. (Ex. 12). Third, Ms. Archer did not pose a threat to the

physical safety of Defendant Orr. (Ex. 10, Orr's Deposition p. 113:24—115:02). Defendant Grimm also admits that she posed no threat and did not initially think that Defendant Orr was going to force Ms. Archer to the ground. (Ex. 18, p. 11:16—13:16). Fourth, she was not a criminal suspect and was not under arrest or evading arrest when Defendant Orr took her down and forced her face into the concrete. The force used by Defendant Orr on Ms. Archer was excessive and unreasonable because no force was necessary. Ms. Archer posed no physical threat whatsoever. No reasonable officer would have thought it was an objectively reasonable use of force - Mesa Police Department found his use of force unnecessary and improper and a fellow police officer did not foresee a takedown of Ms. Archer as it occurred. As such, Ms. Archer is entitled to summary judgment against Defendant Orr for his use of excessive force.

## B. DEFENDANT ORR HAD NO PROBABLE CAUSE TO DETAIN OR ARREST MS. ARCHER

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by Government, and its protection extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). The Supreme Court, in *Terry*, "created a limited exception to the general rule that the police detentions required probable cause, wherein certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." *Florida v. Royer*, 460 U.S. 491 (1983). "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner*

*v. City and County of San Francisco*, 266 F.3d 859, 964 (9th Cir. 2001). Probable cause exists when, under totality of the circumstances known to the arresting officer, a reasonable person would believe that the arrested suspect committed a crime. *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992).

At no point during the incident described herein was there probable cause to arrest or detain Ms. Archer. First, the police officers were not responding to a crime involving Ms. Archer. Thus, the only crime Ms. Archer could have been detained for was "Obstructing Government Operations," A.R.S. § 13-2402, according to the citation she received from Defendant Orr. (Ex. 11). A.R.S. § 13-2402 states:

A. A person commits obstructing governmental operations if, by using or threatening to use violence or physical force, such person knowingly obstructs, impairs or hinders:

1. The performance of a governmental function by a public servant acting under color of his official authority; or

2. The enforcement of the penal law or the preservation of the peace by a peace officer acting under color of his official authority.

B. This section does not apply to the obstruction, impairment or hinderance [hindrance] of the making of an arrest.

C. Obstructing governmental operations is a class 1 misdemeanor.

Ariz. Rev. Stat. § 13-2402 (LexisNexis, Lexis Advance through 54th Legislature (2019), 1st Reg. Sess., Ch. 8).

Defendant Orr did not have probable cause to believe Ms. Archer violated § 13-2402 where no reasonable person could find she obstructed governmental operations "by using or threatening to use violence or physical force." Thus, any obstruction must involve some use of violence or physical force. As the video displays, Ms. Archer did not use violence or physical force against the officers. Instead, Defendant Orr used physical force against Ms. Archer. Ms. Archer complied with the officers' request and was then tackled to the ground and handcuffed. There was no reasonable suspicion or probable cause to seize, handcuff, and detain/arrest an 84-year-old elderly injured woman, who did not pose a threat to anyone or commit a crime, to be placed in handcuff for an exceedingly prolonged time. Defendant Orr did not have probable cause to arrest and detain Ms. Archer and violated her Fourth Amendment right to be free from unlawful arrest and detention.

## C. DEFENDANT ORR MALICIOUSLY AND WITHOUT ANY LAWFUL REASON ISSUED A CRIMINAL CITATION TO MS. ARCHER IN VIOLATION OF THE FOURTH AMENDMENT MALICIOUS PROSECUTION DOCTRINE

In order to prevail on a section 1983 claim of malicious prosecution, Plaintiff "must show that the defendants prosecuted [her] with malice and without probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against officers who have wrongfully caused the charges to be filed". *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings

10

terminated in such a manner as to indicate his innocence." *Id.* at 1068. "[A] dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Id*.

Defendant Orr caused charges to be filed against Ms. Archer when he wrote her a citation for "Obstructing Governmental Operation." (Ex. 11, Obstructing Gov't Ticket; Dkt. #13 ¶ 35). Defendant Orr did not have probable cause to charge Ms. Archer because her actions did not rise to the standards outlined in § 13-2402 because she did not use or threaten to use violence or physical force against the officers. (See Section B). The charge against Ms. Archer was dismissed. (Ex. 12). Therefore, the disposition of the case was in favor of Ms. Archer. Defendant Orr intentionally deprived Ms. Archer of her right to liberty and her right to be free from malicious prosecution without any legal basis and as such Ms. Archer is entitled to summary judgment on her malicious prosecution claim against Defendant Orr.

## D.  DEFENDANT ORR IS NOT ENTITLED TO QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government official 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the

need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). "In determining whether an officer is entitled to qualified immunity, [the Supreme Court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours or [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that rights.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073 (9th Cir. 2012); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Palmer v. Sanderson*, 9 F.3d 1433, 1434 (9th Cir. 1993), the Ninth Circuit held that a deputy sheriff who jerked, punched, handcuffed, and arrested a compliant 67-year-old infirmed man, was not entitled to qualified immunity from the excessive force and unlawful arrest claims. Palmer had recently suffered a stroke which had impaired his mobility. *Id*. He was stopped by the sheriff deputy due to a suspicion that he was driving under the influence of alcohol. *Id*. After complying with all the requests of the deputy sheriff, Palmer told him that he was tired, that it was rainy, and he will go to his car and go

with him to the police station or a clinic if further alcohol tests were necessary. *Id*. In response, the deputy sheriff jerked and punched Palmer, placed him in handcuffs and arrested him. *Id.* He also refused to loosen the handcuffs. *Id.* The Ninth Circuit found that the use of force on Palmer to be excessive and unwarranted under the Fourth Amendment reasonableness standard. *Id*. at 1436. Further, no probable cause was present. *Id*. at 1436-1437. The Court reasoned that the deputy sheriff did not present evidence that Palmer's action justifies the use of force and as such qualified immunity was not warranted. *Id*.

Ms. Archer thus has a clearly established right to not be taken down nor is brutal force used on her by Defendant Orr for no lawful reason. The brutal assault of Defendant Orr provoked bleedings, bruises, and ambulatory medical treatments. (Ex. 2; Ex. 9). Further, as a law-abiding citizen, she has a clearly established right not to be detained, arrested or charged for a crime without probable cause. As argued in the previous subsections, Defendant Orr's actions were excessive and unlawful, and in violation of her constitutional rights. A reasonable officer would have known that Defendant Orr use of force was unnecessary and excessive and that he had no probable cause to detain, arrest and charge her with the crime of obstructing. The City of Mesa Police Department held that his use of force was unnecessary and that his conduct cannot be sustained nor consented by the Department. (Ex. 14, 15, 16 & 17). No reasonable person could believe he was acting objectively reasonably when he used excessive force against Ms. Archer, arrested, detained and charge her with a crime without a lawful basis. As a consequence of his unwarranted and unreasonable actions, Defendant Orr is not entitled to qualified immunity.

13

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiff respectfully requests that this Honorable Court GRANTS this Motion for Summary Judgment.

Respectfully Submitted,

EXCOLO LAW, PLLC

Dated: May 14, 2019

/s/ *Solomon M. Radner*
Solomon M. Radner (MI Bar No. P73653)
Attorney for Plaintiff
26700 Lahser Rd., Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com

14

**CERTIFICATE OF SERVICE**

I hereby certify that on **May 14, 2019** I electronically transmitted the attached document
to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of
Electronic Filing to the following CM/ECF registrants:

Jason K. Reed (#022657)
CITY OF MESA ATTORNEY'S OFFICE
MS-1077
P.O. Box 1466
Mesa, Arizona  85211-1466
Telephone: (480) 644-2343
mesacityattorney@mesaaz.gov


Conrad J. Benedetto, Esq.
Law Offices of Conrad J. Benedetto
1615 S. Broad Street
Philadelphia, PA 19148
cjbenedetto@benedettolaw.com
*Attorney for Plaintiff*


        */s/ Solomon M. Radner*