Jason K. Reed (#022657)
CITY OF MESA ATTORNEY'S OFFICE
MS-1077
P.O. Box 1466
Mesa, Arizona  85211-1466
Telephone: (480) 644-2343
mesacityattorney@mesaaz.gov

Attorneys for Defendants Orr, Grimm, and City of Mesa

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Virginia Archer,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Officer C. Orr; et al.,<br><br>　　　　　Defendants. | Case No. CV-18-2434-PHX-HRH<br><br>**DEFENDANT ORR'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**Introduction**

Plaintiff's motion should be denied because she ignores "material" facts. Based on the "totality of circumstances" and in response to a potentially lethal threat, established law instructs that Officer Orr was justified in using minimal force against Plaintiff, in handcuffing Plaintiff to secure the scene, and in concluding that probable cause existed to issue a citation to Plaintiff. Plaintiff cannot minimize and mischaracterize "material" facts to obtain summary judgment, especially when the objective facts justify the entry of judgment in favor of the Defendants.

**Statement of Facts**

To avoid duplication, Officer Orr incorporates by reference the factual background and legal arguments in Defendants' Motion for Summary Judgment ("DMSJ"). [Doc. 36] To the extent additional material is referenced, that material is cited herein.

**Argument**

**I.   Officer Orr Did Not Use Excessive Force Against Plaintiff And He Did Not Violate "Clearly Established" Law.**

For an excessive force analysis, courts consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74 (2015) (these factors are not "exclusive").

**A.   Plaintiff Ignores Critical Facts Justifying Officer Orr's Use Of Force.**

Critically, the use of force analysis must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. Plaintiff cannot argue that the facts are undisputed when Plaintiff disregards and mischaracterizes the "material" facts related to Officer Orr's decision to use of force.

For example, the primary factor influencing Officer Orr's use of force was the fact that

Plaintiff's grandson was threatening to commit suicide with a gun. [DMSJ, Ex. 1 at Mesa/Archer 1-2] The ramifications of someone who has a gun and the ability to kill or injure from a distance, combined with Plaintiff's and her grandson's actions, were significant. Plaintiff cannot mischaracterize the situation by minimizing the dangerousness of that threat. *County of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017) ("When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim").

Courts recognize that "Suicidal individuals can quickly turn homicidal and may engage police officers in an effort to commit 'suicide by cop.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013). Officer Orr confirmed that "when a subject has experienced a recent trauma (a break up) has previously attempted suicide (20173150672), has chosen a very lethal method (Firearm) and has communicated his intent to kill himself[,] the likelihood of completion is very high. A person who is poised to take their own life is also much more likely to harm others around them, and those who might attempt to stop them." [DMSJ, Ex. 6 at Mesa/Archer 18; DMSJ, Ex. 22 at Mesa/Archer 3019-20 (undisputed expert testimony confirms this analysis)]

To that end, a suicidal subject with a gun has significant ramifications: multiple Officers respond, Officers take cover, Officers avoid distractions, Officers deploy weapons (including rifles and handguns), and Officers attempt to secure the scene to contain the threat. [Ex. 1 at 3:17-3:35] Based on the safety concerns in this case, Officer Orr was justified in using force to control Plaintiff's movements in order to move her to a safer location and ensure she did not interfere with the Officers' response to the suicidal subject. *Los Angeles County, California v. Rettele*, 550 U.S. 609, 614 (2007) ("officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search").

For example, on the 911 call, Plaintiff's daughter reported that "He's suicidal," "he's just saying goodbye to everyone," "he texted my daughter saying he had a gun," and "He said he found

[the gun]. . . . Some kind of handgun, I'm sure." [Ex. 2 at 0:00-4:20 (Plaintiff reportedly did not "want the Police involved")]  The dispatcher then told the Officers that Mr. Hahn was suicidal, he reportedly had a gun (a "422"), and he had a history of suicide attempts.  [Ex. 3 at 0:00-2:20]

After they arrived, Officers called to Mr. Hahn and repeatedly asked him to come out and talk.  He did not follow those directions, and instead, retreated into the house.  At that point, the Police believed that Mr. Hahn was suicidal, that he had a gun, that he would not follow Police instructions, and that he had retreated to a location where Police could not see him.  The Police could not see him or the reported gun, and he could have shot at the Police or the public from inside the house.  [DMSJ, Ex. 2 at 5:50-9:00; DMSJ, Ex. 3 at 3:40-6:50; Ex. 1 at 4:13-4:33]

Plaintiff then exited the house and stood between the house (where her grandson was located) and the Police.  If Mr. Hahn had started shooting then, Plaintiff and the Officers could have been shot.  Recognizing the obvious danger, the Police repeatedly called to Plaintiff and asked her to come to them.  Plaintiff, however, would not follow those directions.  [DMSJ, Ex. 2 at 9:00-13:30, DMSJ, Ex. 3 at 6:50-11:20]

When Plaintiff finally moved closer to the Police, the Officers wanted her to move further back because, even if the vehicles provided some level of cover from a potential shooter, it would be safer to move Plaintiff further back.  [DMSJ, Ex. 3 at 10:45-11:10; DMSJ, Ex. 4 at 2:35-3:00; Ex. 1 at 6:46-7:12]  Plaintiff, however, would not go where the Police wanted her to go.  Instead, she distracted the Officers from focusing on the house and potential shooter, and she was standing too close to Officers who had their weapon deployed.  [DMSJ, Ex. 3 at 11:00-11:30; DMSJ, Ex. 4 at 2:50-3:20; DMSJ, Ex. 2 at 13:10-13:40 (during that time, Plaintiff turned around and appeared to move back towards the house, an Officer with a rifle motioned for Plaintiff to move back multiple times, and another Officer said to "take her back, take her back"); DMSJ. Ex. 14 at 23:9-24:17 (Plaintiff was "dangerous, because it takes my focus away from concentrating on where a supposed gunman was . . . "); Ex. 1 at 7:57-8:20]

For their part, Officers Grimm and Orr tried to move Plaintiff further back and to a safer location. They asked her: "Can you come back here, and I'll talk to you"; "Can you keep coming back here?"; "I need you to come back here. You're not listening. Okay?"; "Come on this way, ma'am"; and you are "not following my directions." [DMSJ, Ex. 3 at 11:00-11:40; DMSJ, Ex. 4 at 2:50-3:30] That, however, did not work. [*Id.*] Both Officers also grabbed Plaintiff's arms to guide her further back. Plaintiff, however, pulled away from both grips. When Officer Orr grabbed a second time, Plaintiff stopped moving and tried to pull and twist away. [*Id.*; DMSJ, Ex. 7 at 12:16-14:10, 19:1-7, 20:21-25; DMSJ, Ex. 8 at 34:8-13; Ex. 4 at 71:12-18, 74:23-24 (Plaintiff admitted that she "was trying to get his hands off of my wrist")]

Based on everything that had happened with Mr. Hahn (suicidal subject with a reported gun who was out of sight) and with Plaintiff (Plaintiff would not follow directions, Plaintiff would not let the Officers physically guide her further back, and Plaintiff pulled and twisted away from Officers), Officer Orr was justified in taking Plaintiff to the ground so that the Officers could quickly gain control and move her a safer location. [DMSJ, Ex. 7 at 107:13-110:23, 32:20-34:3; Ex. 1 at 16:11-17:05; Doc. 54, Ex.7 at 9:45-10:49] *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1775 (2015) ("reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others'") (citations omitted); *Graham v. Connor*, 490 U.S. 386, 396-397 (1989) ("officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"). Plaintiff cannot argue that the "undisputed" facts support her motion when Plaintiff does not address these "material" facts. Fed. R. Civ. P. 56(a).[1]

---

[1] To the extent Plaintiff argues that, because Plaintiff said that her grandson did not have a gun, the Police had no reason to believe that he was a threat. [Doc. 54 at 2] Plaintiff ignores the following: Plaintiff's daughter said that Mr. Hahn had a gun based on a text from Mr. Hahn; Mr. Hahn had a history of suicide; Mr. Hahn did not follow the Officers' directions to come talk; Mr. Hahn retreated to a location where the Police could not see him or the reported weapon; and the Police had no evidence that Mr. Hahn had shown Plaintiff the gun (so she may not have known

Plaintiff also argues that the use of force was unreasonable because Plaintiff allegedly complied with the Officers' directions and because Plaintiff was never a physical threat to the Officers' safety. Regardless of how Plaintiff characterizes her actions, however, that characterization cannot justify summary judgment when it is inconsistent with the objective facts.

For example, **NONE** of the Officers believed that Plaintiff complied with the Officers' directions. [DMSJ, Ex. 6 at Mesa/Archer 18 (Plaintiff "did not respond to the verbal or visual directions she was given by myself and other Officers"); Ex. 5 at Mesa/Archer 22 (Plaintiff "stood in the front yard and ignored commands"); Ex. 6 at Mesa/Archer 12] While Plaintiff was standing on the sidewalk, the Officers repeatedly and unsuccessfully called for Plaintiff to come back to the Officers. [DMSJ, Ex. 2 at 9:00-13:00; DMSJ, Ex. 3 at 6:50-10:50] An Officer told her: You're obstructing our ability to do our job here right now. You need to follow their instructions. You're making the situation more dangerous for us because you don't want to do what you're told. [DMSJ, Ex. 5 at 7:40-8:10; DMSJ, Ex. 4 at 1:55-2:20]

When Plaintiff finally went over to the Police, Officers Grimm and Orr asked her to come further back. Plaintiff, however, would not follow. Officers Grimm and Orr grabbed her arms to try and guide her back. Plaintiff still would not follow. When Orr grabbed her arm more strongly a second time, Plaintiff stopped and tried to pull and twist away from his grip. [DMSJ, Ex. 3 at 11:00-11:40; DMSJ, Ex. 4 at 2:50-3:30; DMSJ, Ex. 7 at 12:16-14:10, 19:1-7, 20:21-25; DMSJ, Ex. 8 at 34:8-13; Ex. 1 at 12:34-12:59; Ex. 4 at 71:12-18, 74:23-24 (Plaintiff admits that she "was just trying to peel his fingers from off of my wrist")] Plaintiff's allegations that she was compliant cannot be squared with either the objective facts or her own admissions. *Kingsley*, 135 S. Ct. at 2473 (2015) (analysis must focus on "the perspective of a reasonable officer").

---

about it). [Ex. 2 at 0:00-4:20 (Plaintiff did not want the Police involved); DMSJ, Ex. 1 at Mesa/Archer 1-2; DMSJ, Ex. 2 at 6:30-8:05; DMSJ, Ex. 3 at 4:20-5:55] The Officers cannot assume that a potentially deadly threat has been neutralized based exclusively on Plaintiff's statement that her grandson did not have a gun. [DMSJ, Ex. 3 at 10:45-11:15]

To the extent Plaintiff suggests that she was not a threat to the Officers' safety, Plaintiff again ignores the context of the situation. Plaintiff's suicidal grandson potentially could have shot at her or at the Police from inside the house. That overriding threat had significant implications on the Police and their attempts to manage the scene—including moving citizens out of the area and allowing the Officers to take cover and focus on the house. Even if Plaintiff herself was not a physical threat to the Officers, Plaintiff made the situation more dangerous because she was distracting the Officers from a potential shooter, the Officers could not adequately focus on the potential shooter, Plaintiff would not follow verbal and physical directions to move away from the Officers and to a safer location, and Plaintiff pulled and twisted away from Officer Orr. [DMSJ, Ex. 2 at 9:00-13:00; DMSJ, Ex. 3 at 6:50-11:35; DMSJ, Ex. 4 at 0:00-3:25; DMSJ, Ex. 7 at 108:24-110:23; Ex. 1 at 12:34-12:59; Ex. 4 at 71:12-18, 74:23-24; Ex. 7 at 40:16-23]

Plaintiff cannot obtain summary judgment by mischaracterizing her own actions and how those actions affected the Officers' response to the suicidal threat. *Kingsley*, 135 S. Ct. at 2473.[2]

### B. Officer Orr Tried Different Tactics And Ultimately Used Minimal Force.

Plaintiff also argues that Officer Orr used excessive force because he "forced her face into the concrete" and "strik[ed] her to the ground." [Doc. 54 at 3, 8] Regardless of how Plaintiff tries to characterize the use of force, however, Plaintiff again cannot ignore the objective evidence.

Officer Orr never wanted to use force against Plaintiff. Based on the situation (suicidal subject with a gun), the Officers needed to move Plaintiff to a safer location for her and the Officers' safety. [DMSJ, Ex. 7 at 51:5-19, 107:13-110:23] To that end, Officer Orr tried several methods to move Plaintiff to a safer location without using force. *Kingsley*, 135 S. Ct. at 2473

---

[2] Plaintiff also suggests that the use of force was improper because Plaintiff has a history of "cerebral strokes, high blood pressure, and renal failure." [Doc. 54 at 1] Officer Orr, however, never had this information, and it cannot be considered in the use of force analysis. [DMSJ, Ex. 1 (this specific information was not transmitted to the on-scene Officers); Ex. 3 (same)] *Kingsley*, 135 S. Ct. at 2473.

(courts consider "any effort made by the officer to temper or to limit the amount of force").

While Plaintiff was standing between the house and the Police, Officer Orr, along with other Officers, repeatedly asked Plaintiff to come out to them. [DMSJ, Ex. 2 at 9:00-13:00; DMSJ, Ex. 3 at 6:50-10:50 (Plaintiff, however, would not cooperate)]  Even when Plaintiff finally moved closer to the Police, Officers Orr and Grimm asked her to move further back.  When that would not work, they tried to grab her arms to guide her back. [DMSJ, Ex. 3 at 11:00-11:30; DMSJ, Ex. 4 at 2:50-3:20; DMSJ, Ex. 2 at 13:10-13:40 (during that time, Plaintiff turned around and appeared to be heading back towards the house, an Officer with a rifle motioned for Plaintiff to move back multiple times, and another Officer said to "take her back, take her back")]  When Plaintiff pulled away from those Officers' grips, Officer Orr grabbed her more securely.  Plaintiff tried to pull and twist away from that grip too. [*Id.*; Ex. 4 at 71:12-18, 74:23-24 (Plaintiff admitted that she "was trying to get his hands off of my wrist" and "was just trying to peel his fingers from off of my wrist")]

Because of Plaintiff's physical resistance, and because Officer Orr had tried other tactics to move her, Officer Orr performed a takedown to protect everyone's safety due to the suicidal subject with an alleged gun and Plaintiff's location in an unsafe area. [DMSJ, Ex. 7 at 50:6-11, 51:5-19, 107:13-110:23; 159:17-160:12, 161:2-16 ("I wish it wasn't necessary that force was used"); Ex. 1 at 13:25-13:30 ("My goal was not to hurt her . . . but to protect her")]

Even with a takedown, Officer Orr still limited the use of force to a technique (a takedown) intended to minimize the "chance of injury." [DMSJ, Ex. 19 at Mesa/Archer 2700-2701]  For example, numerous courts recognize that a "takedown" is "minimal" force. *Lloyd v. Tassell*, 384 Fed. Appx. 960, 962, 964 (11th Cir. 2010) (affirming that "the takedown maneuver was reasonable under the circumstances; [] the amount of force used was minimal"); *Jackson v. City of Bremerton*, 268 F.3d 646, 650–52 (9th Cir. 2001) (finding no excessive force where officers "pushed her to the ground" because the "alleged intrusions were minimal"); *Thompson v. Afamasaga*, 2018 WL

3129303, at *1 (D. Haw. June 26, 2018) ("takedown" was "minimal force to maintain control").[3]

This is consistent with Mesa Police Department Policy that places control holds and takedowns in the lowest level of force category. [DMSJ, Ex. 19 at Mesa/Archer 2700-2701; DMSJ, Ex. 3 at 11:00-11:35 (Officer Orr never used force in the higher levels of force like a strike, a chemical agent, or a taser); DMSJ, Ex. 4 at 2:50-3:25]

The extent and nature of Plaintiff's injuries confirm that Officer Orr did not use significant force against Plaintiff. *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018) (courts "consider the severity of injuries in evaluating the amount of force used. We may infer from the minor nature of a plaintiff's injuries that the force applied was minimal") (citations omitted).

At the hospital, the doctors diagnosed Plaintiff with a bruise by her right eyebrow and abrasions on her arms. [DMSJ, Ex. 18 at Mesa/Archer 259 ("no bleeding or abrasions" associated with the "mild hematoma"); DMSJ, Ex. 13 at 107:25-108:7, 109:1-22 (Plaintiff never needed any follow up for her injuries and has fully recovered)] Even the mild bruise, however, does not accurately reflect the amount of force that Officer Orr used because Plaintiff takes blood thinners and admittedly bruises easily—even with minor trauma. [DMSJ, Ex. 13 at 48:1-7; DMSJ, Ex. 21 at Mesa/Archer 3041-3042 ( "the fact that she was on blood thinners predisposed her to developing contusions with minor trauma)]

Regardless of how Plaintiff wants to characterize the use of force, the objective evidence confirms that "She was not slammed down to the pavement." [DMSJ, Ex. 21 at Mesa/Archer 3041-3042 ("The minimal injuries sustained are consistent with controlled take-down. . . . a more forceful take-down would have resulted in more significant injuries")]

---

[3] Planitiff suggests that Officer Orr performed the takedown so that Plaintiff could not use her hand to cushion the fall as she went to the ground. [Doc. 54 at 3] The video again disproves Plaintiff's assertion; Officer Orr had control of Plaintiff's left arm, and Plaintiff used her right hand to help herself as she was taken toward the ground. [DMSJ, Ex. 3 at 11:25-11:35; DMSJ, Ex. 4 at 3:15-3:25]

**C.     A Violation Of Police Policy Does Not Support A Finding Of Excessive Force.**

Plaintiff also suggests that, because the Police Department found that Officer Orr violated the Department's Code of Conduct policy regarding the use of force, he must have used excessive force. [Doc. 54 at 7] "[V]iolation of a police departmental regulation is insufficient for liability under section 1983." *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001) (citations omitted) (citing *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) ("Whether the deputies violated . . . an internal departmental policy is not the focus of our inquiry")); *Backlund v. Barnhart*, 778 F.2d 1386, 1390 n.5 (9th Cir. 1985) (any violation of its own policy is "irrelevant" to the question of whether state officials are entitled to qualified immunity); *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) ("An officer's compliance with or deviation from departmental policy doesn't determine whether he used excessive force").

Here, Command Officers determined that Officer Orr violated the Department's Code of Conduct policy because the use of force was "unnecessary." [DMSJ, Ex. 9 at 11:21-12:17, 41:20-42:9; DMSJ, Ex. 10 at 10:12-14, 25:7-26:13; DMSJ, Ex. 15; DMSJ, Ex. 20 at No. 61 (policy prohibits "Unnecessary or improper use of force")] Those Officers concluded that Officer Orr should have used a different tactic. [*Id.*; DMSJ, Ex. 9 at 23:12-16, 41:2-25, 51:1-12]

In making that finding, the Officers explained that the Department's standard for the use of force ("necessary") is higher than the Fourth Amendment's legal standard ("reasonableness"). [DMSJ, Ex. 9 at 23:21-24:16, 102:11-19; DMSJ, Ex. 10 at 24:18-25:6; DMSJ, Ex. 11 at 9:5-13] In other words, even if a use of force is "reasonable," it may violate the Police Department's policy if it was not "necessary." [*Id.*]

Moreover, those Officers performed their analysis with the benefit of hindsight and looking for other ways to handle the situation. [DMSJ, Ex. 9 at 50:1-51:12, 65:10-66:6] Plaintiff cannot rely on this analysis to support her claim because it is inconsistent with Fourth Amendment jurisprudence. *Graham*, 490 U.S. at 396-397 (courts cannot use "the 20/20 vision of hindsight"

to analyze an Officer's use of force); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (police officers "need not avail themselves of the least intrusive means of responding").

### D.     Officer Orr Did Not Violate "Clearly Established" Law.

Officer Orr is also entitled to qualified immunity because existing jurisprudence did not place his actions "beyond debate." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (officials are immune unless the "law clearly proscribed [their] actions"); *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991) (qualified immunity provides "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law").

There is no "clearly established" law prohibiting Officer Orr from taking Plaintiff to the ground when the Officers were handling a serious threat (suicidal man with a reported gun who had retreated to inside the house and who was not following Police instructions), when Plaintiff was not following directions, when Plaintiff resisted the Officers' efforts to guide her away from the situation (including pulling and twisting away from Officer Orr), and when Officers felt they needed to control Plaintiff's movements for her and their safety. *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) ("judges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation").

For her part, Plaintiff identifies a single case suggesting that Officer Orr's actions had been "clearly established" as improper. [Doc. 54 at 12-13]  That case, however, does not survive scrutiny because Plaintiff impermissibly attempts to define "clearly established" law too generally and because the case is factually distinct from Plaintiff's allegations.

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018) (citations omitted) ("police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue").  Plaintiff cannot rely on a case

discussing general constitutional principals to negate Officer Orr's qualified immunity—especially when the underlying case is factually distinct from Plaintiff's allegations. *Id*.

For example, the plaintiff in *Palmer* was initially detained on suspicion of driving while intoxicated and apparently had failed two sobriety tests. Because of the weather, the plaintiff was tired of standing, so he walked back to his car and said he would answer the Officer's questions there. The Officer then allegedly "jerked Palmer out of his car, pushed him against it, frisked him, handcuffed him, and pushed him into the back seat of the patrol car with such force that Palmer fell over sideways." *Palmer v. Sanderson*, 9 F.3d 1433, 1436-37 (9th Cir. 1993) (the handcuffing allegedly caused bruising that lasted for several weeks). The plaintiff was then cited for obstructing a public servant under Wash. Rev. Code § 9A.76.020. *Id*. (the citation was subsequently dismissed).

Critical factual distinctions exist between *Palmer* and this case, including the following: *Palmer* did not involve a suicidal subject with a gun; *Palmer* did not involve a potentially lethal situation that implicated Officer and public safety concerns; the *Palmer* Officer was not concerned about a potential shooter; the *Palmer* Officer did not have to take cover behind a vehicle; *Palmer* did not have multiple Officers respond with deployed weapons; the *Palmer* plaintiff did not distract Officers who were concerned about a potential shooter; the *Palmer* plaintiff did not disregard verbal directions; the *Palmer* plaintiff did not disregard the Officer's physical efforts to guide him to a safer area; the *Palmer* plaintiff did not pull and twist away from the Officer, the *Palmer* Officer never performed a takedown; the *Palmer* court did not discuss the use of a takedown; and the *Palmer* excessive force claim was based on allegations that the handcuffs were applied too tightly. *Id*. at 1433-37; *Ryburn*, 565 U.S. at 474 (officer entitled to qualified immunity because "No decision of this Court has found a Fourth Amendment violation on facts even roughly comparable to those present in this case").

Indeed, *Palmer* could not have "clearly established" a law against takedowns because subsequent cases recognize that takedowns continue to be an appropriate use of force. *O'Doan v. Sanford*, 2019 WL 1386373, at *6 (D. Nev. Mar. 26, 2019) (citations omitted) ("[finding] no precedent before the Supreme Court, the Ninth Circuit, or this District that clearly establishes that using a nonlethal, reverse reap throw (or similar technique) to detain an individual, suffering from an alleged medical condition, who is nonresponsive and fails to comply with orders, is excessive force. Rather, the case law most closely on point provides for the opposite conclusion"). [Doc. 36 at 11-12 (listing other cases holding that a takedown was appropriate)]

The Ninth Circuit itself recognized that, "even assuming the takedown involved an unreasonable application of force, the contours of the law were not sufficiently clear to put any reasonable officer on notice" that it would be improper. *Saetrum v. Vogt*, 673 Fed. Appx. 688, 691 (9th Cir. 2016); *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) ("plaintiffs have the burden to prove that the right which the defendants allegedly violated was clearly established").

Officer Orr is also entitled to qualified immunity because an officer violates "clearly established" law only when every "reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741. Multiple Officers testified that Officer Orr's actions were appropriate under the Fourth Amendment. [DMSJ, Ex. 9 at 18:11-19:6, 21:21-22:17, 23:21-24:16, 117:20-118:4; DMSJ, Ex. 10 at 24:18-25:21; DMSJ, Ex. 11 at 7:24-8:14, 52:6-15; DMSJ, Ex. 12 at 5:13-16, 20:2-4] Officer Orr is therefore entitled to qualified immunity.

## II. Plaintiff Was Not Falsely Arrested.

Plaintiff's false arrest claim fails because she was never arrested and taken into custody. *McGovren v. McColl*, 972 F.2d 1340 (9th Cir. 1992) ("McGovren failed to present evidence to establish one of the essential elements of his false arrest claim, namely, that he was arrested"). Plaintiff's claim fails because Plaintiff was never taken to jail, she was never booked, and she was never placed into a holding facility. [DMSJ, Ex. 13 at 86:7-13; DMSJ, Ex. 7 at 152:20-22]

Instead, Plaintiff was detained in handcuffs. [DMSJ, Ex. 3 at 11:30-12:20 (Officer Orr specifically stated that Plaintiff was being detained when she was handcuffed)]

That detention, however, will not support a claim for false arrest. First, Officer Orr never had to establish probable cause or reasonable suspicion to detain Plaintiff because, in potentially dangerous situations, an Officer's authority to detain an individual is "categorical" because "the risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'" *Muehler v. Mena*, 544 U.S. 93, 98-100 (2005) ("An officer's authority to detain . . . does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure'"); *United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) ("officers with a particularized basis to believe that a situation may pose safety risks may handcuff or point a gun at an individual without converting an investigative detention into an arrest"); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995) ("It is well settled that when an officer believes force is necessary to protect his [or her] own safety or the safety of the public, measures to restrain individuals, . . . handcuffing them, are reasonable").

Handcuffing also can be appropriate because, "If occupants are permitted to wander around the premises, there is the potential for interference with the execution of the search warrant. They can hide or destroy evidence, seek to distract the officers, or simply get in the way." *Bailey v. United States*, 568 U.S. 186, 197 (2013).

Here, the Officers had a suicidal subject who reportedly had a gun, who had just retreated inside the house, and who ignored multiple instructions to come out to the Police. When Plaintiff came out, she did not follow directions, she would not leave the dangerous area, she distracted Officers, and she resisted the Officers' verbal and physical efforts to move her to a safer location.

Officer Orr was authorized to detain Plaintiff in handcuffs to maintain control of the situation both for purposes of minimizing "the risk of harm to officers and occupants" and preventing someone from "distract[ing] the officers, or simply get[ting] in the way". *Meuhler*,

544 U.S. at 98-100; *Bailey*, 568 U.S. at 197.  Plaintiff's false arrest claim therefore fails.  *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) ("we allow intrusive and aggressive police conduct without deeming it an arrest . . . when it is a reasonable response to legitimate safety concerns on the part of the investigating officers") (citations omitted).

Officer Orr is also entitled to qualified immunity on this claim because Officer Orr did not violate "clearly established" law.  Plaintiff has not identified a case suggesting that the Police could not detain Plaintiff in handcuffs when the Police needed to remove Plaintiff from a dangerous situation, they needed to protect themselves and the public from a potential shooter, and Plaintiff was not following verbal or physical direction (including pulling and twisting away from Officer Orr).  *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) (Plaintiff has burden to prove that the right "was clearly established").  To the contrary, existing law supported Officer Orr's decision to handcuff Plaintiff.  *Id.*; *Muehler*, 544 U.S. at 100 ("safety risk" justified using handcuffs "to detain multiple occupants" for between two to three hours).

Even if a detention in handcuffs could constitute an arrest, the detention was supported by probable cause.  *Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008) (probable cause is "an absolute defense" to claim for false arrest).

Officer Orr had probable cause to conclude that Plaintiff obstructed governmental operations.  A.R.S. § 13-2402(A)(1) (person is prohibited from "using or threatening to use violence or physical force, [to] knowingly obstructs, impairs or hinders . . . The performance of a governmental function").  For example, the Officers responded to the residence after Plaintiff's daughter called 911 regarding her suicidal son who reportedly had a gun.  As the Officers arrived, their efforts were obstructed, impaired, and hindered by Plaintiff.  Plaintiff did not follow the Officers' instructions, the Officers were unable to address Mr. Hahn while they were dealing with Plaintiff, Plaintiff was distracting the Officers, an Officer waved to get Plaintiff further back, Plaintiff pulled away from Officers who were trying lead her to a safer area, and Plaintiff pulled

away and tried to twist away from Officer Orr. [DMSJ, Ex. 3 at 6:55-11:40; DMSJ, Ex. 4 at 0:00-3:30; Ex. 4 at 71:12-18, 74:23-24 (Plaintiff admits that she "might have . . . tried to twist away," that she "was trying to get his hands off of my wrist," and that she "was just trying to peel his fingers from off of my wrist")]

Plaintiff argues that Officer Orr did not have probable cause because Plaintiff allegedly did not use force "against" Officer Orr. [Doc. 54 at 10] The statute, however, does not require that Plaintiff use force "against" an Officer. A.R.S. § 13-2402(A)(1) (statute does not require that a person use "violent" force). Instead, a person can violate the statute if he or she uses "physical" force to obstruct, impair, or hinder a governmental operation. *Id*. (statute also does not have a quantum of force requirement). A suspect can violate the statute if she "struggled and resisted" as an Officer attempted to restrain her. *State v. Mason*, 2009 WL 2031897, at *3 (Ariz. Ct. App. July 14, 2009); *State v. Clary*, 2 P.3d 1255, 1258 (Ariz. Ct. App. 2000) ("resist[ing] execution" of a search warrant would violate this statute).

Here, Plaintiff was pulling and twisting away from Officer Orr (using physical force) when the Officers were trying to move her further back. [DMSJ, Ex. 3 at 11:00-11:35; DMSJ, Ex. 4 at 2:50-3:25; Ex. 4 at 71:12-18, 74:23-24 (Plaintiff admits that she "might have . . . tried to twist away," that she "was trying to get his hands off of my wrist," and that she "was just trying to peel his fingers from off of my wrist")] Because of this "physical" force, Officer Orr had probable cause that Plaintiff violated the statute. [*Id*.] *Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause, we have often told litigants, is not a high bar").

Officer Orr is also entitled to qualified immunity if "it is *reasonably arguable* that there was probable cause." *Henry v. Bank of Am. Corp.*, 522 Fed. Appx. 406, 408 (9th Cir. 2013) (emphasis in original). Based on the facts, Officer Orr established, at a minimum, that "arguable" probable cause existed to conclude that Plaintiff interfered with government operations. *Id*.

Officer Orr is also entitled to qualified immunity because "clearly established" law did not preclude his actions. Again, Plaintiff cites only *Palmer* to suggest that an Officer cannot effectuate an arrest without probable cause. [Doc. 54 at 12-13]  Plaintiff cannot rely on the general statements of constitutional law to negate Officer Orr's qualified immunity. *Kisela*, 138 S. Ct. at 1152-3 (existing precedent must "squarely govern[]" the specific facts).

Moreover, and as discussed above, the facts in *Palmer* are distinct from the allegations in this case.  Critically, concerns about the Officers' and public's safety simply were not implicated in *Palmer*.  *Palmer*, 9 F.3d at 1434 (*Palmer* involved a traffic stop related to "driving while intoxicated," not a suicidal subject with a gun).  Plaintiff has not identified any case comparable to this case suggesting that Officer Orr did not have probable cause to believe that Plaintiff violated A.R.S. § 13-2402.  *Id*.  As discussed above, case law would suggest that, considering the Officers' safety concerns and their interest in securing the scene, the handcuffing was appropriate. *Meuhler*, 544 U.S. at 98-100; *Bailey*, 568 U.S. at 197.

### III. Plaintiff Was Not Maliciously Prosecuted.

"[A] § 1983 claim for malicious prosecution requires a plaintiff to show lack of probable cause." *Smith v. City of Payson*, 585 Fed. Appx. 421, 422 (9th Cir. 2014).  As discussed above, Officer Orr had probable cause to issue a citation to Plaintiff for obstructing governmental operations, and as a result, this claim fails.

Second, an essential element of a malicious prosecution claim is that the plaintiff actually be prosecuted.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919-20 (9th Cir. 2012) ("an action for malicious prosecution will not lie unless some further step is taken [beyond the arrest], such as bringing the accused before a magistrate for determination whether he is to be held").  Here, Plaintiff admits that the citation was dismissed before she ever went to court. [DMSJ, Ex. 13 at 86:14-18]  Because she was never prosecuted, her malicious prosecution claim fails.

Third, Plaintiff has not shown that Officer Orr "had in mind some evil or sinister purpose" in issuing the ciation. *Fenters v. Chevron*, 2010 WL 5477710, at *32 (E.D. Cal. Dec. 30, 2010). Officer Orr issued the citation because he established probable cause. [Ex. 7 at 82:9-12] That is not malice.

Finally, Officer Orr is entitled to qualified immunity because, at a minimum, he had "arguable" probable cause. The singular case cited by Plaintiff does not "clearly establish" that Officer Orr acted improperly because it does not discuss a malicious prosecution claim, it impermissibly relies on general statements of constitutional law, it does not compare factually to this case, and it does not compare legally to this case because it discusses a different, out-of-state statute. *Palmer*, 9 F.3d at 1434-36.

**Conclusion**

Officer Orr respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment.

Dated this 28th day of May, 2019.

      /s/ Jason K. Reed
Jason K. Reed
Deputy City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of May, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Solomon M. Radner, Esq.
Excolo Law, PLLC
26700 Lahser Road, Suite 401
Southfield, Michigan 48033
*Attorney for Plaintiff*

Conrad J. Benedetto, Esq.
Law Offices of Conrad J. Benedetto
1615 S. Broad Street
Philadelphia, PA 19148
*Attorney for Plaintiff*

 /s/ Mirna Poiani