IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Virginia Archer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Officer C. Orr #19441, et al., | ) |
| | )     No. 2:18-cv-2434-HRH |
| Defendants. | ) |
| | ) |

<u>O R D E R</u>

<u>Cross-motions for Summary Judgment</u>

Defendants move for summary judgment.[1]  This motion is opposed,[2] and plaintiff cross-moves for summary judgment against defendant Orr.[3]  Plaintiff's cross-motion is opposed.[4]  Oral argument was not requested and is not deemed necessary.

<u>Facts</u>

Plaintiff is Virginia Archer.  Defendants are Officer C. Orr #19441, Officer D. Grimm #18904, and the City of Mesa.

---

[1]Docket No. 36.

[2]Docket No. 58.

[3]Docket No. 54.

[4]Docket No. 60.

On February 14, 2018, Officers Orr and Grimm, as well as other Mesa police officers, were dispatched to plaintiff's residence after receiving a 911 call from plaintiff's daughter, Sue Ellen Johnson. Johnson requested that police check on her son, Andrew Hahn, who lived with Archer, because he had sent a text message saying goodbye and he had a gun. Johnson advised that plaintiff was inside the residence and that she was elderly and very sick. Although the officers were not told this specific information, plaintiff was 84 years old and had just recently had a stroke.

When police arrived, Hahn was sitting in a car which was parked in the driveway. Police set up a parameter around the residence. Officers had weapons drawn because of the report that Hahn had a gun, and the officers were using Officer Orr's police car as cover. An officer began communicating with Hahn over the loudspeaker. Hahn was advised that the police were there to help him and he was asked to come out to talk to them. Hahn however got out of the car and went into the house and police lost sight of him. After Hahn went into the house, the officer continued to communicate with him over the loudspeaker, asking him to come out to talk to them.

At some point thereafter, plaintiff appeared at the front door of the house. The officers asked plaintiff to come out and talk to them. Plaintiff started down the front sidewalk and then stopped. Plaintiff was asked repeatedly to walk toward the officers and advised that she was making it difficult for them to do their job. She was told that the officers just wanted to talk to her and that she was not in any trouble. Plaintiff asked that the officers come to her and

she told them that Hahn did not have a gun. Plaintiff wanted the officers to come inside the house and see that there was no gun.

Plaintiff eventually walked to where the officers were staged, but they wanted to get her further back because the officers did not know where Hahn was. Plaintiff had stopped in the middle of the officers, including one officer who had his rifle out. Officer Grimm asked plaintiff "Can you come back here, and I'll talk to you," explaining that it was for plaintiff's safety as well as the officers' safety.[5] Officer Grimm asked plaintiff again, "Can you keep coming back here?"[6] Plaintiff then turned around to face the house and appeared to be heading back toward the house. At this point, the officer on the loudspeaker told Officers Grimm and Orr to "Take her back, take her back, take her back."[7] Officer Grimm grabbed plaintiff's right arm to pull her away from the other officers, telling her "I need you to come back here. You're not listening. Okay?"[8] Plaintiff asked Officer Grimm, "What are you doing?" and pulled her arm away from Officer Grimm.[9] Officer Orr then grabbed plaintiff's left arm, asking her to "Come on this way, ma'am."[10] Plaintiff pulled away from Officer Orr,

---

[5]Exhibit 4 at 2:50-3:05, Defendants' Motion for Summary Judgment, Docket No. 36.

[6]Id. at 3:00-3:04.

[7]Exhibit 3 at 11:10-11:15; Defendants' Motion for Summary Judgment, Docket No. 36.

[8]Exhibit 4 at 3:05-3:13, Defendants' Motion for Summary Judgment, Docket No. 36.

[9]Id. at 3:13-3:15.

[10]Exhibit 3 at 11:10-11:16, Defendants' Motion for Summary Judgment, Docket No. 36.

who then grabbed plaintiff's arm more securely and put his other hand on her back. Plaintiff asked Officer Orr "What are you doing?"[11] while turning slightly away from Officer Orr. Officer Orr thought plaintiff was trying to pull away from him and he put her in a control hold and took her to the ground. In his incident report, Officer Orr wrote that he "used a control hold to force [plaintiff] down to [the] ground in order to gain physical control of her since she was placing herself and those around her in danger due to having to divide [their] attention . . . between her and the threat to the front."[12]

Officers Grimm and Orr then handcuffed plaintiff, lifted her up, and escorted her away from the staging area. Officer Grimm told plaintiff that she was being "detained because you are not following directions."[13] Officers Grimm and Orr offered to let plaintiff sit in the back seat of a patrol car because it was raining, but plaintiff said she could not get up into the vehicle. Plaintiff requested that the handcuffs be removed because they were hurting her but was told that they could not be removed.

Medics were called after Officer Orr noticed a bump on plaintiff's head. When the medics arrived, plaintiff, who was still handcuffed, was walked back to them for evaluation. Plaintiff's handcuffs were finally removed after the medics requested that they be removed.

---

[11]Id. at 11:15-11:30.

[12]Incident/Investigation Report, Exhibit 4 at Mesa/Archer 000019, Plaintiff's Motion for Summary Judgment against Defendant Orr, Docket No. 54.

[13]Exhibit 4 at 3:39-3.41, Defendants' Motion for Summary Judgment, Docket No. 36.

Plaintiff remained handcuffed for approximately 20 minutes. Plaintiff was transported to the hospital where she was diagnosed with a "minor head injury" consisting of swelling and bruising around her right eye and abrasions on her left forearm and right wrist.[14]

While she was at the hospital, Officer Orr gave plaintiff a citation for obstructing governmental operations. This charge was subsequently dismissed by the City.

An investigation into the incident was conducted after plaintiff complained to the Mesa Police Department. Officer Orr was found to have violated the Mesa Police Department's Code of Conduct Policy as it pertains to unnecessary force and was suspended for ten hours and required to do ten hours of additional training. Officer Grimm was found to have acted within policy.

On August 2, 2018, plaintiff commenced this action. In her amended complaint, plaintiff asserts § 1983 false arrest claims against Officers Grimm and Orr, a § 1983 excessive force claim against Officer Orr, a § 1986 failure to intervene claim against Officer Grimm,[15] a § 1986 malicious prosecution claim against Officer Orr,[16] and a § 1983 claim against the City. Plaintiff seeks compensatory damages and punitive damages.

_____

[14]Exhibit 18 at 2, 5, Defendants' Motion for Summary Judgment, Docket No. 37-8.

[15]Although plaintiff has labeled this a § 1986 claim, "[a] claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff's complaint contains no section 1985 claims. This claim thus has been treated as a § 1983 failure to intercede claim.

[16]The court has treated this claim as a § 1983 malicious prosecution claim for the same reason noted above.

Defendants now move for summary judgment on all of plaintiff's claims. Plaintiff cross-moves for summary judgment on her claims against Officer Orr.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "[W]hen[,]" as here, "parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).

### excessive force claim against Officer Orr

"The use of excessive force by a law enforcement officer may constitute a violation of the Fourth Amendment's prohibition against unreasonable seizures of the person." Lowry v.

City of San Diego, 858 F.3d 1248, 1254 (9th Cir. 2017). "The elements of a claim of excessive force in violation of the Fourth Amendment are that the defendant used excessive force during a lawful stop or arrest." Vardanyan v. Port of Seattle, Case No. C11-1224-RMS, 2012 WL 1821212, at *5 (W.D. Wash. May 17, 2012) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002).

Officer Orr contends that he is entitled to qualified immunity on plaintiff's excessive force claim. "Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was 'clearly established' at the time of the challenged conduct[.]" Morales v. Fry, 873 F.3d 817, 821 (9th Cir. 2017). The court "may address these two prongs in either order." Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018).

To determine whether Officer Orr violated the Fourth Amendment, the court must consider whether his "actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." A. K. H by and through Landeros v. City of Tustin, 837 F.3d 1005, 1010 (9th Cir. 2016) (quoting Graham, 490 U.S. at 397). "To determine the reasonableness of an officer's actions," the court "'balance[s] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Id. at 1010-11 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). "The need for such balancing means that 'summary judgment . . . in excessive force cases should be granted

sparingly.'" <u>Boyd v. Benton County</u>, 374 F.3d 773, 779 (9th Cir. 2004) (quoting <u>Santos</u>, 287 F.3d at 853). The court "evaluate[s] the totality of the circumstances, paying careful attention to factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." <u>Landeros</u>, 837 F.3d at 1011 (internal citations omitted). "The 'most important' of these factors is 'whether the suspect posed an immediate threat to the safety of the officers or others.'" <u>Id.</u> (quoting <u>Mattos v. Agarano</u>, 661 F.3d 443, 441 (9th Cir. 2011)).

Viewing the evidence in the light most favorable to plaintiff, a reasonable fact finder could conclude that Officer Orr used excessive force. But, even if Officer Orr used excessive force, he is entitled to qualified immunity because he did not violate a clearly established right.

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Estate of Lopez by and through Lopez v. Gelhaus</u>, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.'" <u>Id.</u> (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011)). "For a right to be 'clearly established,' existing "precedent must have placed the statutory or constitutional question <u>beyond</u> <u>debate</u>,' such that 'every' reasonable official, not just 'a' reasonable official,

would have understood that he was violating a clearly established right." Thompson, 885 F.3d at 587 (quoting al-Kidd, 563 U.S. at 741). "'[I]t is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness [of defendants' actions] was apparent in light of preexisting law.'" Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002) (quoting Malik v. Brown, 71 F.3d 724, 727 (9th Cir. 1995)). However, "absent any published opinions on point or overwhelming obviousness of illegality," a court will rarely conclude that a right was clearly established. Id. The Ninth Circuit has held "that the 'clearly established' inquiry is a question of law that only a judge can decide." Morales, 873 F.3d at 821.

Plaintiff argues that Officer Orr's use of force clearly violated established law, citing to Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993). There, Palmer was stopped by Officer Sanderson "on suspicion of driving while intoxicated. Palmer was then 67 years old and had recently suffered a stroke which had impaired his mobility." Id. at 1434. Sanderson requested that Palmer get out of his car and Sanderson performed two field sobriety tests, which did not confirm that Palmer was intoxicated. Id. Palmer then "grew tired of standing in the rain taking tests, so he walked back to his car, telling Sanderson that he would sit there and answer questions. Palmer also told Sanderson that he would accompany Sanderson to the police station to take a breath test if Sanderson desired." Id.

> Sanderson then allegedly jerked Palmer out of his car, pushed
> him against it, frisked him, handcuffed him, and pushed him into
> the back seat of the patrol car with such force that Palmer fell
> over sideways. Palmer claims that the handcuffs were tight

enough to cause pain and discoloration to his wrists, and that Sanderson refused his request to loosen them.

Id. at 1434–35.  After noting that "the Fourth Amendment right to be free from the use of excessive force during an arrest was clearly established at the time of Palmer's arrest in November 1988[,]" the court found the force used by Sanderson was excessive.  Id. at 1436. The court explained that

> Palmer claims that Sanderson fastened Palmer's handcuffs so tightly around his wrist that they caused Palmer pain and left bruises that lasted for several weeks. Sanderson has presented no evidence that would justify handcuffing Palmer so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained of the pain. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional.

Id.

Plaintiff argues that Palmer clearly established that she had a right not to be taken down to the ground when she was complying with police directions. Plaintiff argues that a reasonable officer would have known that Officer Orr's use of force was excessive.

But, Palmer appears to define "clearly established law" too generally.   The court in Palmer stated that "the Fourth Amendment right to be free from the use of excessive force during an arrest was clearly established at the time of Palmer's arrest in November 1988[.]" Id. at 1436.  The Supreme Court has "repeatedly told courts . . .  not to define clearly established law at a high level of generality" because "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." City and County of San Francisco, Calif. v. Sheehan,

135 S. Ct. 1765, 1775–76 (2015) (citation omitted). "The general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." al-Kidd, 563 U.S. at 742.

As to the violative nature of the particular conduct at issue in this case, Palmer is also of little help because of significant fact differences. Both cases did involve older individuals who had recently had strokes and who interacted with police officers in the rain. But, there the similarities end. Unlike this case, Palmer did not involve a suicidal subject who was reportedly armed with a gun, there were not multiple officers who responded to the situation with deployed weapons, and the plaintiff in that case did not distract the officers by getting between them and a potentially armed individual. And, Palmer only involved allegations that handcuffs were applied too tightly and did not involve a take down.[17] Palmer does not clearly establish that using a takedown to control someone who, by her actions, is distracting officers from dealing with a suicidal subject who reportedly is armed with a gun, would be unlawful.

---

[17]In her amended complaint, plaintiff's excessive force claim is also based on an allegation that "Officer Orr handcuffed [her] more tightly than necessary to effectuate an arrest." Amended Complaint [etc.] at 8, ¶ 5.5, Docket No. 8. However, in the briefing on the cross-motions for summary judgment, the focus of plaintiff's excessive force arguments is the take down. Except for one conclusory statement that "[t]he Ninth Circuit has held 'that overly tight application of handcuffs can, depending on the circumstances, constitute a violation of the Fourth Amendment[,]'" plaintiff makes no argument that her Fourth Amendment rights were violated by the application of handcuffs. Plaintiff's Reply [etc.] at 2, Docket No. 64 (quoting Santos, 287 F.3d 854). The court thus treats plaintiff's excessive force claim based on the application of handcuffs as abandoned. Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008).

Indeed, even after Palmer, the Ninth Circuit has continued to recognize that the contours of the law involving takedowns are not "sufficiently clear." Saetrum v. Vogt, Case No. 15-35656, 2016 WL 7367841, at *2 (9th Cir. Dec. 20, 2016). For example, in Saetrum, the plaintiff was arrested for "dealing marijuana" and [d]uring the course of his arrest, defendant Jake Vogt allegedly drove his patrol car into Saetrum and then executed a hands-on takedown, causing him to suffer a concussion." Id. at *1. The Ninth Circuit found that the takedown did not violate clearly established law, noting that "[a]lthough we have recognized constitutional violations in at least two cases where officers tackled suspects, both cases involved greater force and weaker justification than are present here." Id. at *2.

Plaintiff insists that the "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was . . . well-established in 2001, years before the events at issue in this case." Young v. County of Los Angeles, 655 F.3d 1156, 1168 (9th Cir. 2011). But, here, plaintiff did pose a threat to officer safety. While she was not a physical threat to the officers, she was distracting them from dealing with Hahn and, at one point, she had made a potentially dangerous situation more dangerous by putting herself in between Hahn and the officers who had their weapons deployed. Moreover, Young involved the use of more significant force than that used by Officer Orr. In Young, the officer "pepper sprayed Mark Anthony Young and struck him with a baton after Young exited his vehicle and disobeyed Wells's order to reenter it." Id. at 1158.

In sum, there was no clearly established law prohibiting Officer Orr from taking plaintiff to the ground when the officers were dealing with a potentially armed, suicidal individual, when plaintiff had not promptly followed instructions, when plaintiff resisted efforts to guide her to a safer location, and when officers felt they needed to control plaintiff's movements for her safety as well as the safety of the officers. Plaintiff has not cited to any factually analogous cases and it was not overwhelmingly obvious that Officer Orr's conduct violated plaintiff's Fourth Amendment rights. Thus, Officer Orr is entitled to qualified immunity on plaintiff's excessive force claim.

Defendants' motion for summary judgment on plaintiff's excessive force claim against Officer Orr is granted. Plaintiff's motion for summary judgment on her excessive force claim against Officer Orr is denied.

<u>false arrest claims against Officers Orr and Grimm</u>

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." <u>Dubner v. City and County of San Francisco</u>, 266 F.3d 959, 964 (9th Cir. 2001). Defendants argue that plaintiff's false arrest claims fail because she was never arrested.

"The standard for determining whether a person is under arrest is not simply whether a person believes that he is free to leave, but rather whether a reasonable person would believe that he is being subjected to more than [a] temporary detention[.]" <u>United States v. Guzman-Padilla</u>, 573 F.3d 865, 884 (9th Cir. 2009) (citations omitted). "'[W]here force is used such that the innocent person could reasonably have believed he was not free to go <u>and</u>

-13-

that he was being taken into custody indefinitely, an arrest has occurred.'" Id. (quoting Kraus v. Pierce County, 793 F.2d 1105, 1109 (9th Cir. 1986)). But, "[o]fficers with a particularized basis to believe that a situation may pose safety risks may handcuff or point a gun at an individual without converting an investigative detention into an arrest." Id. Whether an arrest has occurred is a question of fact, "guided by the general Fourth Amendment requirement of reasonableness[.]" Gallegos v. City of Los Angeles, 308 F.3d 987, 991 (9th Cir. 2002).

Here, it is undisputed that plaintiff was put in handcuffs and remained in handcuffs for approximately 20 minutes even though she asked to have the handcuffs removed. Plaintiff argues that a reasonable person would have believed that she was not free to leave under such circumstances.

However, simply being put in handcuffs is not sufficient to establish that plaintiff was arrested. As the Ninth Circuit has observed, "'we allow intrusive and aggressive police conduct without deeming it an arrest . . . when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.'" United States v. Miles, 247 F.3d 1009, 1012–13 (9th Cir. 2001) (quoting Washington v. Lambert, 98 F.3d 1181, 1187 (9th Cir. 1996)); see also, United States v. Price, 921 F.3d 777, 790 (9th Cir. 2019) (citation omitted) ("handcuffing is a substantial factor in determining whether an individual has been arrested —although it alone is not determinative"); Alvarez v. Treat, Case No. CIV S-05-0169 DFL PAN (JFM) PS, 2006 WL 1222684, at *6 (E.D. Cal. May 4, 2006) (citing Muehler v. Mena, 125 S. Ct. 1465, 1470-71 (2005)) ("[t]he use of handcuffs is warranted in inherently dangerous settings to minimize the risk of harm to suspects, officers and innocent third parties").

Here, it is undisputed that plaintiff was handcuffed and that Officers Orr and Grimm initially refused to remove the handcuffs after plaintiff complained but did so after the medics requested that the handcuffs be removed. It is also undisputed that the officers were responding to a call involving a reported suicidal individual who had a gun, had just gone into the residence, and was ignoring instructions from the police to come out of the house. It is also undisputed that when plaintiff came out of the house, she did not promptly comply with the officers' requests to come toward them so they could move her to a safer location. And, it is undisputed that plaintiff was never taken to jail, was never booked, and was never placed in a holding facility. Viewing these undisputed facts in the light most favorable to plaintiff, no reasonable fact finder could conclude that plaintiff was arrested.[18] No reasonable person would have "believed he was not free to go and that he was being taken into custody indefinitely[.]" <u>Guzman-Padilla</u>, 573 F.3d at 884 (quoting <u>Kraus</u>, 793 F.2d at 1109).

Defendants' motion for summary judgment on plaintiff's false arrest claims against Officers Orr and Grimm is granted. Plaintiff's cross-motion for summary judgment on her false arrest claim against Officer Orr is denied.

<u>malicious prosecution claim against Officer Orr</u>

"To claim malicious prosecution, a petitioner must allege 'that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose

_____

[18]Officer Orr testified that he believed plaintiff had been arrested. Videotaped Deposition of Christopher Orr at 153:22-23, Exhibit 10, Plaintiff's Motion for Summary Judgment against Defendant Orr, Docket No. 55-1. But Officer Orr's subjective belief is irrelevant. <u>Johnson v. Bay Area Rapid Transit Dist.</u>, 724 F.3d 1159, 1176 (9th Cir. 2013).

of denying her equal protection or another specific constitutional right.'" Lacey v. Maricopa County, 693 F.3d 896, 919 (9th Cir. 2012) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)). "It requires 'the institution of criminal proceedings against another who is not guilty of the offense charged' and that 'the proceedings have terminated in favor of the accused.'" Id. (quoting Restatement (Second) of Torts § 653 (1977)). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).

But, "'an action for malicious prosecution will not lie unless some further step is taken, such as bringing the accused before a magistrate for determination whether he is to be held[.]'" Lacey, 693 F.3d at 919-20 (quoting Restatement (Second) of Torts § 654 cmt. e). Here, it is undisputed that no further step was taken. Viewing the evidence in the light most favorable to plaintiff, no reasonable fact finder could conclude that plaintiff was maliciously prosecuted.

Defendants' motion for summary judgment on plaintiff's malicious prosecution claim against Officer Orr is granted. Plaintiff's cross-motion for summary judgment on her malicious prosecution claim against Officer Orr is denied.

failure to intervene claim against Officer Grimm

"'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir.

1994)). "'[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.'" Kyles v. Baker, 72 F. Supp. 3d 1021, 1040 (N.D. Cal. 2014) (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 n.3 (1st Cir. 1990)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Cunningham, 229 F.3d at 1289.

Plaintiff argues that a reasonable fact finder could conclude that Officer Grimm had enough time to take charge, stop Officer Orr, and escort her further down the street to a safer spot. However, viewing the evidence (in particular Officer Orr's and Officer Grimm's body cam video) in the light most favorable to plaintiff, no reasonable fact finder could conclude that Officer Grimm had time to intervene. The take down happened so quickly that Officer Grimm had no opportunity to prevent Officer Orr from taking plaintiff to the pavement.

Plaintiff also argues that Officer Grimm could have helped her after she was down on the pavement, rather than helping Officer Orr handcuff her. Plaintiff argues that there was no justification for handcuffing her and thus she contends that Officer Grimm could have interceded to prevent her from being detained in handcuffs. However, as noted above, plaintiff has abandoned her claim that Officer Orr used excessive force in connection with the application of handcuffs. Thus, any claim that Officer Grimm failed to intercede in connection with the application of handcuffs fails.

Defendants' motion for summary judgment on the failure to intervene claim against Officer Grimm is granted.

<u>§ 1983 claim against the City</u>

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011) (citing <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 694 (1978)).

> In order to establish liability for governmental entities under <u>Monell</u>, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."

<u>Id.</u> (quoting <u>Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997)).

The only possible constitutional violation here is that Officer Orr may have used excessive force when he took plaintiff to the pavement.  Plaintiff's § 1983 claim against the City is based on allegations that the City failed to adequately supervise and train Officer Orr and allegations that the City ratified Officer Orr's conduct.

"To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." <u>Christie v. Iopa</u>, 176 F.3d 1231, 1239 (9th Cir. 1999) (citation omitted).  Plaintiff argues that in defending Officer Orr's actions, the City is, in effect, ratifying his actions.  Plaintiff argues that Assistant Chief Cost expressly ratified

Officer Orr's conduct when he testified that this conduct did not violate the Fourth Amendment, even though it violated departmental policy.[19]

However, "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). "[T]he plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question." Lassiter v. City of Bremerton, 556 F.3d 1049, 1055 (9th Cir. 2009) (quoting Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992)). Given that it is undisputed that Officer Orr was disciplined for violating the Department's Code of Conduct as it applies to the use of force, no reasonable fact finder could conclude that the City has ratified Officer Orr's conduct.

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." Dougherty, 654 F.3d at 900 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)). "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" Id. (quoting Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989)). "A 'pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" Estate of Nunez by and through Nunez v. County of San Diego, — F. Supp. 3d —, 2019 WL 2164052, at *5 (S.D. Cal. 2019) (quoting Connick v. Thompson, 563 U.S. 51, 62 (2011)).  However,

---

[19]Videotaped Deposition of Ken Cost at 18:11-19:6, Exhibit 2, Plaintiff's Response to Defendants['] Motion for Summary Judgment, Docket No. 58.

"[t]he Supreme Court" has "'left open the possibility that, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference.'" Id. (quoting Connick, 563 U.S. at 63). "For instance, '[a] plaintiff may succeed in proving a failure to train claim without showing a pattern where a violation of federal rights may be a highly predictable consequence of a failure to equip [the employees] with specific tools to handle recurring situations.'" Id. (quoting Bd. of Cnty. Commissioners v. Brown, 520 U.S. 397, 409 (1997)).

Plaintiff argues that this is such a case because the Mesa Police Department's policies do not establish clear guidelines on the use of force. She argues that she has evidence that within the Department, there is inconsistency in the application of the use of force policies. This evidence is apparently that officers testified differently as to whether they thought Officer Orr had used excessive force. Assistant Chief Cost testified that Officer Orr's actions were objectively reasonable.[20] Commander Abalos also testified that Officer Orr's use of force was objectively reasonable.[21] Officer Gillis testified that he thought Officer Orr's use of force was objectively reasonable.[22] And, Lieutenant Scanio testified that he believed that Officer Orr

---

[20]Cost Deposition at 18:11-13, 117:22-118:1, Exhibit 9, Defendants' Motion for Summary Judgment, Docket No. 36-10.

[21]Videotaped Deposition of Anthony Abalos at 25:14-21, Exhibit 10, Defendants' Motion for Summary Judgment, Docket No. 37.

[22]Videotaped Deposition of Kevin Gillis at 52:6-15, Exhibit 11, Errata, Docket No. 40.

did nothing wrong.[23]  But, in his investigative report, Commander Abalos wrote that Officer Orr's "use of a control hold take-down to gain control of Archer was not objectively reasonable."[24]  And, Officer McClure wrote in his report that "[i]n my opinion the takedown of the elderly female was objectively unreasonable based on the facts and circumstances."[25]

This is sufficient evidence to at least create an issue of fact as to whether the Mesa Police Department had adequately trained and/or supervised its officers in terms of the use of force.  Thus, defendants are not entitled to summary judgment on plaintiff's § 1983 failure to train and supervise claims against the City.

punitive damages

Defendants argue that plaintiff's request for punitive damages against the City should be dismissed.  "A jury may award punitive damages under § 1983 if a defendant's conduct was driven by evil motive or intent, was malicious or oppressive, or when it involved a reckless or callous indifference to the constitutional rights of others."  Hernandez v. Skinner, — F. Supp. 3rd —, 2019 WL 2290498, at *7 (D. Mont. 2019) (citing Dang v. Cross, 422 F.3d 800, 809 (9th Cir. 2005)).  However, "[a] municipality is immune from punitive damages

---

[23]Deposition of Lieutenant Kurt Scanio at 5:13-23, Exhibit 12, Defendants' Motion for Summary Judgment, Docket No. 37-2.

[24]Mesa Police Department Interoffice Memo from Commander Anthony Abalos to Assistant Chief Ken Cost, Exhibit 16 at Mesa/Archer 002766, Defendants' Motion for Summary Judgment, Docket No. 37.

[25]Mesa Police Department Interoffice Memo from Officer M. McClure #12223 to Chain of Command at Mesa/Archer 002671, Exhibit 1, Plaintiff's Response to Defendants['] Motion for Summary Judgment, Docket No. 58.

under 42 U.S.C. § 1983." <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981). Thus, plaintiff's request for punitive damages against the City is dismissed.

## Conclusion

Defendants' motion for summary judgment[26] is granted in part and denied in part. It is granted as to plaintiff's excessive force claim against Officer Orr, her false arrest claims against Officers Orr and Grimm, her malicious prosecution claim against Officer Orr, and her § 1983 claim against the City based on a ratification theory. It is also granted as to plaintiff's request for punitive damages against the City. It is denied as to plaintiff's § 1983 claim against the City that is based on a failure to train and/or supervise theory.

Plaintiff's motion for summary judgment on her claims against Officer Orr[27] is denied.

DATED this 15th day of July, 2019.

/s/ H. Russel Holland
United States District Judge

_____

[26]Docket No. 36.

[27]Docket No. 54.